IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LEONEL BRAVO-ZAMORA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:11cv494-MHT |
| ) | (WO) |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This case is before the court on a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255.

### I.  INTRODUCTION

On December 15, 2009, a jury found the petitioner, Leonel Bravo-Zamora ("Bravo-Zamora"), guilty of possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On March 4, 2010, the district court sentenced Bravo-Zamora to 188 months in prison.

Bravo-Zamora appealed. His appointed counsel filed a no-merit "*Anders* brief"[1] with the Eleventh Circuit. On December 7, 2010, the appellate court affirmed Bravo-Zamora's conviction and sentence, finding no arguable issues of merit upon independent review of the record in the case. *United States v. Bravo-Zamora*, No. 10-1192.

On June 15, 2011, Bravo-Zamora, proceeding *pro se,* filed this § 2255 motion,

---

[1] *See Anders v. California*, 386 U.S. 738 (1967).

asserting that his former counsel rendered ineffective assistance in the following ways:

1. Counsel failed to explain the option and merits of pleading guilty, despite Bravo-Zamora's "significant language barrier and his multiple pleas for guidance and assistance in interpretation."

2. Counsel failed to provide or explain any discovery materials to Bravo-Zamora.

3. Counsel failed to object to prejudicial misinformation in the presentence investigation report ("PSI").

4. Counsel failed to object to the alleged charge of conspiracy, "even though no such evidence of conspiracy existed and no individuals were named in conjunction with conspiratorial activity."

5. Counsel failed to address the fact that no phone or phone logs offered in evidence belonged to Bravo-Zamora, "even though [the] prosecution introduced unsubstantiated evidence as testimony that phone conversations confirmed criminal activity despite no recordings, logs, taps, or evidence."

6. Counsel failed to argue that the amount of drugs involved in the charged offense was unsubstantiated at trial.

7. Counsel failed to argue that the residence where the drugs were seized did not belong to Bravo-Zamora, but rather was the property of Flora Gonzales.

8. Counsel failed to discredit Flora Gonzales's testimony regarding her familiarity with Bravo-Zamora.

9. Counsel failed to request a mistrial based on the falsified and tainted testimony of Jose Llamas.

10. Counsel failed to argue mitigating factors warranting a downward departure in Bravo-Zamora's sentence.

11. Counsel failed to object to "tainted and unsubstantiated

      evidence."

12. Counsel failed to discredit the dishonest trial testimony of witnesses against Bravo-Zamora.

13. Counsel failed to argue Bravo-Zamora's lack of connection to the drug evidence.

14. Counsel failed to "properly and effectively arrange [a] jury of peers."

15. Counsel failed to object to "outrageous and prejudicial statements."

16. Counsel failed to "bring forward witnesses, evidence, or documentation."

17. Counsel failed to cross-examine witnesses for credibility.

18. Counsel failed to challenge the 188-month sentence as "unwarranted and unreasonable."

Doc. No. 1 at 4-36.[2]

      The Government argues that, in each of his claims of ineffective assistance of counsel, Bravo-Zamora (1) fails to identify specific acts or omissions of counsel that fell below an objective standard of reasonableness and (2) fails to demonstrate that counsel's alleged errors or omissions resulted in prejudice to such an extent that, without such errors or omissions, there is a reasonable probability that the outcome of the proceedings would have been

---

[2] The claims in Bravo-Zamora's motion are not always clearly delineated and they overlap in places. For organizational and analytical purposes, this court has recast some of the claims in a more appropriate form. References to document numbers ("Doc. No.") are those assigned by the Clerk of Court in the instant civil action or, where noted, in the underlying criminal proceedings in Case No. 1:09cr109-MHT. Page references to pleadings are to those assigned by CM/ECF.

different.  Doc. No. 12.  *See Strickland v. Washington*, 466 U.S. 668 (1984).

Based on its consideration of the parties' submissions and the record, the court concludes that an evidentiary hearing is not required and that, pursuant to Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts*, Bravo-Zamora's § 2255 motion should be denied.

## II.   DISCUSSION

### A.   General Standard of Review

Collateral review is not a substitute for direct appeal; therefore, the grounds for collateral attack on final judgments of conviction are extremely limited. A federal prisoner is entitled to relief under 28 U.S.C. § 2255 only if the district court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum sentence authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).  "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete

miscarriage of justice." *Id*. at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice"). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent."

**B.     Claims of Ineffective Assistance of Counsel**

A claim of ineffective assistance of counsel must be evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689. Second, petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted). The court will "avoid second-guessing counsel's performance: It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*. (internal quotation marks and brackets omitted). Thus, "[g]iven the strong presumption in favor of competence, the

5

petitioner's burden of persuasion – though the presumption is not insurmountable – is a heavy one." *Id*.

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id*. at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Accordingly, once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id*. at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

A criminal defendant's right to effective assistance of counsel continues through direct appeal. *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985). Ineffective assistance of appellate counsel may be shown if the movant can "establish ... that counsel omitted

6

significant and obvious issues while pursuing issues that were clearly and significantly weaker.... Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Mayo v. Henderson*, 13 F.3d 528, 533 (2nd Cir. 1994).

### 1. *Failure to Explain Option and Merits of Pleading Guilty*

Bravo-Zamora contends that his counsel rendered ineffective assistance by failing to explain the option and merits of pleading guilty, despite his "significant language barrier and his multiple pleas for guidance and assistance in interpretation." *See* Doc. No. 1 at 4, 17-18, 24 & 29-32.

Addressing this claim in an affidavit filed with the court, Bravo-Zamora's former counsel, Benjamin E. Schoettker,[3] states that "on more than one occasion" prior to trial, he discussed the sentencing guidelines with Bravo-Zamora and the way that a guilty plea would affect those guidelines, but that "Mr. Bravo-Zamora refused to even entertain the idea of pleading to the offense." Doc. No. 3 at 2. Schoettker further states that he consulted and met with Bravo-Zamora regularly prior to trial, using the services of a court-appointed interpreter to communicate with his client, who is a native Spanish speaker. *Id*. at 1.

Bravo-Zamora's allegations against Schoettker are wholly conclusory and are supported by few facts and little argument. Bravo-Zamora does not contest Schoettker's

---

[3] Schoettker, a CJA panel attorney, was appointed to represent Bravo-Zamora on June 5, 2009, the date of Bravo-Zamora's arrest. Schoettker continued to represent Bravo-Zamora through trial and sentencing. He was allowed to withdraw from further representation of Bravo-Zamora on appeal pursuant to *Anders v. California*, 386 U.S. 738 (1967).

assertion that the two met regularly prior to trial to discuss the case and, specifically, to discuss the effect a guilty plea might have on application of the sentencing guidelines. Nor does Bravo-Zamora suggest with any degree of particularity how the use of an interpreter in his case prevented him from understanding the option and merits of a guilty plea. He does not allege that the Government presented a specific plea offer that Schoettker could have, but did not, convey to him or indicate that he ever expressed to Schoettker a willingness to negotiate a plea agreement. The record reflects that Bravo-Zamora staunchly denied his guilt through sentencing. *See, e.g.*, Case No. 1:09cr109-MHT, Doc. No. 53 (PSI) at 4, ¶ 11; *Id.*, Doc. No. 65 (Transcript of Sentencing Hearing) at 24-25.

Here, Bravo-Zamora fails to identify specific acts or omissions of Schoettker that fell below an objective standard of reasonableness or to establish a reasonable probability that any alleged errors or omissions by Schoettker in this regard affected the outcome of the proceedings. *Strickland*, 466 U.S. at 689 & 694. Consequently, Bravo-Zamora is not entitled to relief based on this claim of ineffective assistance of counsel.

### 2.  *Failure to Provide or Explain Discovery Materials*

In the cursory manner that characterizes most of his claims, Bravo-Zamora asserts that Schoettker rendered ineffective assistance of counsel by failing to provide or explain to him any of the discovery materials in the case. *See* Doc. No. 1 at 4, 18 & 24.

Schoettker addresses this allegation by Bravo-Zamora as follows:

> This allegation is simply untrue. Leading up to the trial of this matter I frequently met with Mr. Bravo-Zamora to discuss the evidence he could

> expect the government to put on at the trial of this matter. Quite frankly the evidence against him was quite overwhelming; this required me to speak with him regarding every aspect of the evidence in the hopes that he would come to understand that it was going to be difficult to be successful. On each occasion I was assisted by an interpreter. We spent many hours planning and preparing for trial. Mr. Bravo-Zamora indicated from our first conversation until our last that he had no intentions of entering a plea and that he was innocent of the charges against him. He stated on more than one occasion that he was grateful to me for all of the effort I was putting into the case and seemed to be pleased with my representation.

Doc. No. 3 at 2.

Bravo-Zamora fails to establish that Schoettker's actions in this regard were professionally unreasonable. Further, he fails to establish how he was prejudiced by Schoettker's allegedly deficient performance. Consequently, he is not entitled to relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 689 & 694.

### 3. *Failure to Object to PSI*

Bravo-Zamora asserts that Schoettker rendered him ineffective assistance of counsel by failing to object to prejudicial misinformation contained in the PSI. *See* Doc. No. 1 at 18 & 24.

In his affidavit, Schoettker states that he reviewed the PSI with Bravo-Zamora for its accuracy and any potential objections, but Bravo-Zamora failed to indicate there was anything incorrect or objectionable in the PSI. Doc. No. 3 at 3. In his § 2255 motion, Bravo-Zamora does not specify any erroneous or unduly prejudicial information in the PSI.

This court cannot conclude that Schoettker's failure to present objections to the PSI was professionally unreasonable or prejudicial when Bravo-Zamora has failed to point to any

9

information contained in the PSI that he alleges is erroneous. Consequently, Bravo-Zamora is not entitled to any relief based on this claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 689 & 694.

### 4. *Failure to Object to Allegations of Conspiracy*

Bravo-Zamora asserts that Schoettker rendered him ineffective assistance of counsel when he "did not object to [the] alleged charge of 'conspiracy' even though no such evidence of conspiracy existed and no individuals were named in conjunction with conspiratorial activity relating [to] this case." Doc. No. 1 at 18. Bravo-Zamora fails to elaborate on this claim. However, to the extent it can be understood, it is not supported by the record.

At trial, the Government contended that Bravo-Zamora and Jose Llamas (a cooperating witness who testified against Bravo-Zamora) distributed methamphetamine for an individual known as "Primo." The Government sought to introduce out-of-court statements contained in a series of phone calls in which Llamas arranged drug deals involving himself, Primo, and Bravo-Zamora. The phone calls were placed from Llamas to Primo at the behest of DEA agents, who listened in on – and recorded – both sides of conversations between Llamas and Primo.[4] The Government maintained that the out-of-court statements on the phone calls were admissible because they constituted coconspirator

---

[4] Llamas had been arrested and had agreed to cooperate with DEA agents in their investigation of methamphetamine distribution.

statements made in furtherance of a conspiracy.[5] Schoettker, however, objected to admission of the statements on the ground that there was no evidence of a conspiracy and therefore the statements were inadmissible hearsay. *See* Case No. 1:09cr109-MHT, Doc. No. 62 (Trial Transcript - Vol. 1) at 21-27; *id.*, Doc. No. 63 (Trial Transcript - Vol. 2) at 12.

The district court ultimately found that a conspiracy involving at least Bravo-Zamora and Primo existed and that the statements by Primo on the phone calls were made in furtherance of that conspiracy. Case No. 1:09cr109-MHT, Doc. No. 63 (Trial Transcript - Vol. 2) at 19. Thus, the statements were allowed into evidence over Schoettker's objections. *Id*.

Bravo-Zamora fails to demonstrate that Schoettker's performance in this regard was professionally unreasonable. As noted, Schoettker objected to admission of the statements on the ground that there was no evidence of a conspiracy and thus the statements were inadmissible hearsay. Schoettker argued vigorously to keep the statements out of the evidence. The fact that Schoettker's arguments against admission of the statements were not successful does not entitle Bravo-Zamora to any relief based on this claim of ineffective assistance of counsel.

---

[5] Rule 801(d)(2)(E) of the Federal Rules of Evidence provides that a statement is not hearsay if it is offered against a party and is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." *See* Fed.R.Evid. 801(d)(2)(E). Coconspirator statements are admissible under Rule 801(d)(2)(E) even if – as in Bravo-Zamora's case – no formal charge of conspiracy exists, so long as the government establishes independent evidence of the conspiracy. *United States v. Jackson*, 757 F.2d 1486, 1490 (11th Cir. 1985) (citing *United States v. Jones*, 542 F.2d 186, 202 n.31 (4th Cir. 1976)).

### 5. *Failure to Object to Phone Evidence*

Bravo-Zamora contends that Schoettker was ineffective for failing to "address the fact" that no phone or phone logs offered into evidence belonged to him, "even though [the] prosecution introduced unsubstantiated evidence as testimony that phone conversations confirmed criminal activity despite no recordings, logs, taps, or evidence." *See* Doc. No 1 at 18-19.

As noted above, Schoettker objected to admission of the statements on the phone calls involving Jose Llamas and Primo. The fact that Bravo-Zamora was not a participant in the conversations would have been self-evident to jurors. Further, this fact was noted by Schoettker in his cross-examination of Llamas and other government witnesses. Schoettker was also able to elicit testimony from Llamas that, although Bravo-Zamora was found in possession of a cell phone that had apparently received a call from a telephone with the same number Llamas used when calling Primo to arrange drug deals, Llamas had never used a phone with that number to arrange drug deals with Bravo-Zamora, and "there would be no reason for [ ] Bravo-Zamora to have a cell phone with Llamas's telephone number on it."

Bravo-Zamora does not suggest what more Schoettker should have done with regard to this evidence. He fails to identify specific acts or omissions of Schoettker that fell below an objective standard of reasonableness or to establish a reasonable probability that any alleged errors or omissions by Schoettker in this regard affected the outcome of the proceeding. *Strickland*, 466 U.S. at 689 & 694. Consequently, he is not entitled to relief

based on this claim of ineffective assistance of counsel.

### 6.  *Failure to Argue that Drug Amounts Were Unsubstantiated*

Bravo-Zamora maintains that Schoettker was ineffective for failing to argue that the amount of drugs involved in the charged offense was unsubstantiated at trial. *See* Doc. No. 1 at 4 & 18.

Testimony presented at trial indicated that investigators recovered approximately 14 grams of methamphetamine from a bathroom that Bravo-Zamora was seen exiting shortly before execution of a search warrant, and recovered approximately 535 grams of methamphetamine from a laundry closet in the same residence where the search was conducted. *See* Case No. 1:09cr109-MHT, Doc. No. 62 (Trial Transcript - Vol. 1) at 42-54. Bravo-Zamora sets forth no basis whatsoever upon which Schoettker should have challenged the veracity of these drug amounts. He demonstrates neither deficient performance nor resulting prejudice, foreclosing relief on this claim of ineffective assistance of counsel.

### 7.  *Failure to Argue Residence Where Drugs Were Found Was Flora Gonzales's*

Bravo-Zamora contends that Schoettker was ineffective for failing to argue that the residence where the drugs were found did not belong to him, but rather was the property of Flora Gonzales. Doc. No. 1 at 19.

The trial testimony of investigating drug agents and Flora Gonzales plainly established that Gonzales was renting the apartment where the drugs were found, that Gonzales and her young children lived in the apartment, that the property was not owned or leased by Bravo-

Zamora, and that Bravo-Zamora was living with Gonzales on the day of his arrest and had been living with her for approximately two weeks. *See, e.g.*, Case No. 1:09cr109-MHT, Doc. No. 63 (Trial Transcript - Vol. 2) at 29-31. Jurors were well aware that the residence where the drugs were found was not owned or leased by Bravo-Zamora. The matter was undisputed at trial. Consequently, Bravo-Zamora cannot demonstrate ineffective assistance of counsel in this regard by Schoettker.

### *8.     Failure to Discredit Flora Gonzales's Testimony*

Bravo-Zamora contends that Schoettker rendered him ineffective assistance of counsel by failing to seek to discredit Flora Gonzales's testimony "when she repeatedly (three times) stated that she did not know the Defendant and never saw him before, then, only after pressure from [the] prosecution, reluctantly attempted to change her testimony and state that she 'thinks' Defendant may have stayed at the home on occasion." *See* Doc. No. 1 at 19.

Bravo-Zamora does not characterize Gonzales's testimony accurately. Gonzales never testified that she did not know Bravo-Zamora, and freely acknowledged that Bravo-Zamora was living with her on the day of his arrest and had been living with her for approximately two weeks. Case No. 1:09cr109-MHT, Doc. No. 63 (Trial Transcript - Vol. 2) at 29-31. The only manner in which she disclaimed familiarity with Bravo-Zamora was to say that he was difficult to recognize in court, because he was clean shaven and well dressed for the trial. *Id.* at 31.

During cross-examination by Schoettker, Gonzales testified that she had known

Bravo-Zamora since childhood and that she had never seen him with drugs or known him to use drugs. *Id*. at 35. In light of this testimony, Schoettker states that he "didn't see the benefit of making [Gonzales] out to be untruthful." Doc. No. 3 at 4. Schoettker's decision was professionally reasonable, and Bravo-Zamora fails to show how it resulted in any prejudice to this defense. Consequently, Bravo-Zamora is not entitled to relief based on this claim of ineffective assistance of counsel.

### 9.   *Failure to Request Mistrial*

In an entirely conclusory fashion, Bravo-Zamora contends that Schoettker rendered him ineffective assistance of counsel by failing to request a mistrial based on the "falsified and tainted testimony" of Jose Llamas. Doc. No. 1 at 19. Bravo-Zamora fails to point to a single instance of allegedly false or tainted testimony by Llamas upon which a motion for a mistrial might have been based. Schoettker states in his affidavit that there were no grounds on which to request a mistrial based on Llamas's trial testimony. Doc. No. 3 at 4. Under the circumstances, Bravo-Zamora has demonstrated neither deficient performance by Schoettker nor any prejudice. As a result, he is not entitled to relief based on this claim of ineffective assistance of counsel.

### 10.   *Failure to Seek Downward Departure at Sentencing*

Bravo-Zamora claims that Schoettker was ineffective for failing to argue mitigating factors to warrant a downward departure in his sentence. Doc. No. 1 at 26-28.

Bravo-Zamora's claim notwithstanding, the record reflects that Schoettker argued

vigorously at sentencing that Bravo-Zamora was entitled to a downward variance in his sentence, urging that his client should receive a sentence of 120 months, the statutory minimum and well below the otherwise applicable guidelines range, which was calculated in the PSI to be from 188 months to 235 months.  *See* Case No. 1:09cr109-MHT, Doc. No. 65 (Transcript of Sentencing Hearing).  Although the district court ultimately imposed a bottom-of-the-guidelines sentence of 188 months, the court declined to grant a downward departure or variance, finding that Bravo-Zamora had persisted in proclaiming his innocence – and denying all responsibility – in the face of overwhelming evidence of his guilt.  *Id*. at 24-25

In his § 2255 motion, Bravo-Zamora does not suggest any ground upon which Schoettker should have argued for imposition of a downward departure apart from the grounds that Schoettker in fact presented to the court in support of a variance.  The fact that Schoettker's arguments for a variance were not successful does not entitle Bravo-Zamora to relief based on this claim. Bravo-Zamora has demonstrated neither deficient performance by Schoettker nor prejudice.  Consequently, collateral relief is not warranted here.

    **11.  *Other, Wholly Conclusory Allegations of Ineffective Assistance of Counsel***

Bravo-Zamora's § 2255 motion also contains the following claims of ineffective assistance of counsel, all of which are asserted in entirely conclusory fashion, with no supporting facts or argument:

- Counsel was ineffective for failing to object to "tainted and

- unsubstantiated evidence." *See* Doc. No. 1 at 4.

- Counsel was ineffective for failing to discredit the dishonest trial testimony of witnesses against Bravo-Zamora. *Id*.

- Counsel was ineffective for failing to argue Bravo-Zamora's lack of connection to the drug evidence. *Id*.

- Counsel was ineffective for failing to "properly and effectively arrange [a] jury of peers." *Id*. at 5.

- Counsel was ineffective for failing to object to "outrageous and prejudicial statements." *Id*.

- Counsel was ineffective for failing to "bring forward witnesses, evidence, or documentation." *Id*.

- Counsel was ineffective for failing to cross-examine witnesses for credibility. *Id*.

- Counsel was ineffective for failing to challenge the 188-month sentence as "unwarranted and unreasonable." *Id*. at 6-7.

The rules applicable to 28 U.S.C. § 2255 motions (and § 2254 petitions) "mandate 'fact pleading' as opposed to 'notice pleading,' as authorized under Federal Rule of Civil Procedure 8(a). ... The reason for the heightened pleading requirement – fact pleading – is obvious. Unlike a plaintiff pleading a case under Rule 8(a), the habeas petitioner ordinarily possesses, or has access to, the evidence necessary to establish the facts supporting his collateral claim; he necessarily became aware of them during the course of the criminal prosecution or sometime afterwards [.]" *Borden v. Allen*, 646 F.3d 785, 810 (11th Cir. 2011).

Here, Bravo-Zamora fails to plead sufficient facts – and indeed fails to plead *any* facts – in support of his collateral claims. Accordingly, with respect to each of the above-listed

claims of ineffective assistance of counsel, Bravo-Zamora demonstrates neither deficient performance by his counsel nor any prejudice stemming from counsel's acts or alleged omissions.[6] *Strickland*, 466 U.S. at 687–88 & 694.  Consequently, he is not entitled to collateral relief based on these claims of ineffective assistance of counsel.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. § 2255 motion filed by Bravo-Zamora be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **July 31, 2013**.  A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal

---

[6] For instance, Bravo-Zamora fails to identify any "tainted and unsubstantiated" evidence presented at trial; fails to specify the dishonest testimony allegedly presented against him; fails to explain how he was not tried by a jury of his peers; fails to identify any "outrageous and prejudicial statements" made at trial; fails to identify the witnesses, evidence, or documentation Schoettker should have – but did not – bring forward; and fails to explain how his sentence was "unwarranted and unreasonable."  The record also refutes Bravo-Zamora's cursory allegations that Schoettker did not attempt to cross-examine or discredit the Government's witnesses or argue Bravo-Zamora's lack of connection to the drug evidence.  Schoettker vigorously challenged Llama's credibility during cross-examination and in his opening and closing arguments to the jury.  Schoettker also argued that Bravo-Zamora was unaware of the presence of the methamphetamine discovered in Flora Gonzales's residence.

factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE, this 17th day of July, 2013.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE